**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PETER MURPHY,

        Plaintiff,

        v.

MILLENNIUM RADIO GROUP LLC, et al.,

        Defendants.

Civil Action No. 08-1743 (MAS) (TJB)

OPINION

**SHIPP, District Judge**

    This matter comes before the Court on the motion of Defendants Millennium Radio Group LLC ("Millennium"), Craig Carton, and Ray Rossi (collectively, "Defendants") for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (ECF Nos. 113, 114.) Plaintiff Peter Murphy, in response, has filed his own motion (1) asking the Court, under Rule 56(d) of the Federal Rules of Civil Procedure, to defer its decision on Defendants' motion so that he may conduct additional discovery and (2) requesting a spoliation inference. (ECF No. 115.) The Court has carefully considered the parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons expressed below, Defendants' motion for partial summary judgment is granted in part and denied in part, and Plaintiff's motion for additional discovery is granted in part and denied in part. Plaintiff's motion for a spoliation inference sanction is denied.

I.  **<u>Background</u>**[1]

Plaintiff, a photographer, brings suit against Millennium, Carton, and Rossi for alleged copyright infringement, violations of the Digital Millennium Copyright Act ("DMCA"), and defamation, in connection with the Defendants' use of Plaintiff's copyrighted photograph and statements made by Carton and Rossi during a radio broadcast. Carton and Rossi, at the time of the events at issue, co-hosted a radio program on WKXW 101.5, a radio station owned by Millennium. (Defs.' Statement of Undisputed Material Facts ("SUMF") ¶ 1.) Plaintiff was hired by a magazine, *New Jersey Monthly* ("*NJM*"), to photograph Carton and Rossi. (*Id.* ¶ 2.) Plaintiff's photograph of Carton and Rossi appeared in *NJM*, in its March 2006 issue, along with a credit in the margin identifying Plaintiff as the photographer, which is referred to as a gutter credit. (*See id.* ¶¶ 2, 4, 5, 8.) After Plaintiff's photograph appeared in *NJM*, someone working for WKXW posted a copy of the photograph on the radio station's website, however, without the gutter credit, but otherwise unaltered (*see id.* ¶¶ 4, 5, 8), and invited listeners to alter the photo and submit altered versions to the radio station (Compl. ¶ 12, Ex. C). Approximately twenty-six listener-altered photographs were posted to the radio station's website. (SUMF ¶ 7.)

On June 18, 2007, counsel for Plaintiff sent correspondence to Millennium advising it of the alleged infringement and other wrongful conduct, requesting settlement, and threatening litigation should a settlement not be negotiated. (Boyd Decl., Ex. S; SUMF ¶ 9.) Four days later, on June 22, 2007, Carton and Rossi, during their radio program, allegedly made defamatory

---

[1] As Plaintiff has opted to move under Rule 56(d), rather than file opposition to Defendants' motion for summary judgment, Plaintiff has not submitted a responsive statement of material facts under Local Civil Rule 56.1(a). However, Plaintiff's counsel has submitted an extensive declaration with record citation in support of his motion. (Decl. of Autumn Witt Boyd ("Boyd Decl."), ECF No. 115-2.) The Court will accept the undisputed facts provided by Defendants and supported by materials in the record, unless contrary to a fact attested to by Plaintiff's counsel and supported by record citation. *See* Fed. R. Civ. P. 56(c).

2

statements (1) implying that Plaintiff was a homosexual and (2) describing Plaintiff as litigious and someone to avoid in business dealings. (SUMF ¶ 10.) Plaintiff requested a copy of this broadcast. Millennium records all of its radio broadcasts but deletes each broadcast "on the third day after the recording is made . . . so as to make room for the next broadcast to be recorded." (Aff. of Eric Johnson ("Johnson Aff.") ¶¶ 2, 3, ECF No. 20.) Plaintiff claims—and Defendants dispute—that counsel for Plaintiff, Maurice Harmon, called WKXW's program director, Eric Johnson, on the morning of June 25, 2007, within three days, requesting that the recording from June 22 be preserved. (Defs.' Opp'n Br. 3, ECF No. 122; Pl.'s Moving Br. 3, ECF No. 115-1.) On July 9, 2007, Plaintiff's counsel sent formal correspondence to WKXW requesting preservation of the recording. (Decl. of Thomas J. Cafferty, Opp'n Br. ("Cafferty Decl. II"), Ex. D, ECF No. 122-1; Pl.'s Moving Br. 3.) Defendants have not provided Plaintiff with a copy of the recording; rather, Johnson submitted an affidavit to the Court attesting to the deletion policy. (*See* Johnson Aff.) Defendants claim that a litigation hold was instituted after Plaintiff filed suit. (Cafferty Decl. II ¶ 10.)

On April 8, 2008, Plaintiff filed suit. Plaintiff's Complaint contains three broad categories of claims against Millennium, Carton, and Rossi: (1) copyright infringement; (2) violations of the DMCA, 17 U.S.C. § 1202; and (3) defamation. (Compl. ¶¶ 20-67.) Throughout the course of this litigation, the District Court has engaged in active case management, limiting discovery and permitting the filing of partial summary judgment motions in order to resolve issues that may be ripe for adjudication. In June 2009, the Court stayed discovery and allowed Defendants to file a motion for summary judgment (ECF No. 23); Plaintiff responded with a motion seeking a continuance of the motion for summary judgment pending additional discovery under Rule 56(d)

3

(ECF No. 25). The Court denied Plaintiff's motion (ECF No. 29) and granted summary judgment for Defendants on all claims (ECF Nos. 43, 44).

Plaintiff appealed that decision, and the Third Circuit vacated the Court's decision and remanded on all counts. (ECF No. 46.) The Third Circuit held that (1) the gutter credit at issue qualifies as copyright management information, or CMI, under the DMCA; (2) Defendants' posting of the unaltered image does not constitute a fair use; and (3) additional discovery was necessary to resolve the defamation claims. *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 305, 309-10 (3d Cir. 2011). Notably, Plaintiff, in appealing the District Court's grant of summary judgment, did not appeal the portion of the Court's order that granted judgment on claims of infringement based on the twenty-six listener-altered images; accordingly, that portion of the District Court's decision was left undisturbed. *See id.* at 306 n.15.

Following remand to the District Court in July 2011, the discovery stay was lifted, and the case was designated for mediation. Mediation was ultimately unsuccessful, and in July 2012, the case was transferred from the Honorable Judge Joel A. Pisano, U.S.D.J., to the Undersigned. (ECF No. 76.) Defendants again moved for partial summary judgment in December 2012, and Plaintiff again moved under Rule 56(d) for a continuance of the motion and requested additional discovery. (ECF Nos. 81, 84.) Defendants' motion was granted in part and denied in part, and specific, additional discovery was ordered in an effort to resolve outstanding factual issues relevant to the motion. (ECF No. 97.)

Defendants again move for partial summary judgment on what is essentially four discrete issues. Two of the issues presented deal with Plaintiff's DMCA claims and two are related to the defamation claims. Plaintiff responds that these issues are not ripe for summary judgment and the motion should be continued pending additional discovery. Plaintiff also requests a discovery

4

sanction, a spoliation inference, claiming that Defendants have destroyed or failed to preserve evidence.

## II. Legal Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . , admissions, interrogatory answers, or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotation marks omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should only be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

If there has been inadequate discovery of facts necessary to decide a summary judgment motion, a nonmoving party can defend the motion on that basis. Rule 56(d) states: "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other

5

...

appropriate order." Fed. R. Civ. P. 56(d). Properly supported Rule 56(d) motions are granted "as a matter of course," and "it is 'improper' for a district court to rule on summary judgment without first ruling on a pending Rule [56(d)] motion." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (citing *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1314-15 (3d Cir. 1994) (referring to the previous codification of Rule 56(d) at Rule 56(f)). "This is particularly so when there are discovery requests outstanding or relevant facts are under the control of the moving party." *Id.* Stated differently, "[i]f discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion [for summary judgment]." *Id.* (citing *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 845-46 (3d Cir. 1992)).

The Third Circuit has "interpreted this provision to require 'a party seeking further discovery in response to a summary judgment motion [to] submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" *Penn. Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012) (alteration in original) (citing *Dowling v. Phila.*, 855 F.2d 136, 139-40 (3d Cir. 1988)). Failure to submit the required affidavit is fatal to a Rule 56(d) motion. *Id.*

Rule 56(d) only precludes partial summary judgment where discovery is needed on an issue material to the motion. It is well settled that a party may move for partial summary adjudication of a part of a claim or defense. Fed. R. Civ. P. 56(a) advisory committee notes ("The first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case, but also as to a claim, defense, or part of a claim or defense."). If the discovery requested by the nonmovant is not "essential to justify its opposition," Fed. R. Civ. P. 56(d), a court may rule on the motion for summary judgment. *See Cyberworld Enter. Techs., Inc. v. Napolitano*, 602 F.3d 189, 200 (3d Cir. 2010). Therefore, if a moving party has presented an issue

for which no additional discovery is needed, that issue is ripe for summary judgment, regardless of the bald invocation of Rule 56(d).

## III. Analysis

As discussed, Defendants seek partial summary judgment on four discrete issues. Each asserted basis for summary judgment will be evaluated in turn. Plaintiff's motion under Rule 56(d) will be considered in conjunction with each of Defendants' asserted bases for summary judgment. Then, the Court will consider Plaintiff's motion for a spoliation inference.

### A. DMCA

Two of the asserted bases for summary judgment relate to Plaintiff's claims under the DMCA: First, Defendants assert that, with respect to the *listener-altered* images previously deemed fair use, a claim under § 1202 of the DMCA cannot be maintained because there is no underlying infringement. Second, Defendants assert that, with respect to the *unaltered* image, their single use of the work cannot support a claim under § 1202 of the DMCA.

#### 1. Listener-Altered Images

Defendants argue that a § 1202 claim requires a resulting infringement. Because no infringement occurred with respect to the listener-altered images, Defendants assert, it is impossible for Plaintiff to show that Defendants acted with the requisite intent under § 1202. Plaintiff responds that, while this issue appears purely legal, additional discovery is needed, prior to the Court's determination, in order to ascertain the circumstances under which Defendants removed the gutter credit.

The Court first must determine whether Plaintiff's request for additional discovery precludes a decision on this portion of Defendants' motion. The Court does not agree with Plaintiff

7

that further discovery is necessary to resolve this issue.[2] Rather, Defendants present a purely legal question: whether a claim under § 1202 is per se invalid if a defendant's conduct does not result in an infringement. Accordingly, the Court must determine the merits of the question presented.

The portions of § 1202(b) at issue prohibit the intentional removal or alteration of so called "copyright management information," or CMI, and the distribution of works knowing that CMI was removed or altered. Section 1202(b) states, in relevant part:

> No person shall, without the authority of the copyright owner or the law—
>
> > (1) intentionally remove or alter any copyright management information . . . or
> >
> > (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b). The Third Circuit, in its decision in this case, has already determined that a printed credit identifying the author of a copyrighted work, such as the gutter credit in *NJM*, constitutes CMI for the purposes of the DMCA. *Murphy*, 650 F.3d at 305. Put at issue by Defendants is the intent requirement under 1202(b)—whether the removal or alteration of CMI, or distribution of CMI-altered works, is committed while "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement." *See* § 1202(b). Defendants contend that the removal or alteration of CMI, or the distribution of CMI-altered works, cannot support a violation of § 1202 if there was no infringement because this intent

---

[2] Plaintiff, in support of his 56(d) motion and in opposition to summary judgment on the issue presented by Defendants with respect to the twenty-six listener-altered images, spends a great deal of effort describing the other potential infringements that may have occurred but have not yet been discovered. However, the Court's decision is limited to the issue presented by Defendants, which relates solely to the twenty-six listener-altered images that were deemed fair use. Accordingly, any other potential infringements are irrelevant to this portion of the Court's decision.

element is necessarily absent. The Court is not aware of any decision in any court that has squarely addressed Defendants' contention.[3]

Regardless of the paucity of authority on the issue, the plain meaning of § 1202(b) precludes Defendants' reading of the statute.[4] Again, Defendants contend that there can be no § 1202(b) claim if no infringement results because the requisite intent is necessarily absent. The relevant subsections of § 1202(b), however, forbid the target conduct where the offender has the knowing *intent to abet* infringement. In fact, the requisite intent to abet need not be "knowing" in all cases—in a civil action, such as this, an offender need only have "reasonable grounds to know" that he or she will abet infringement. *See* § 1202(b). Indeed, § 1202(b) identifies several different ways a violator can knowingly abet an infringement through the removal of CMI—a violator can "induce, enable, facilitate, or conceal an infringement." *See id.* Congress could have easily drafted § 1202(b) to include a strict resulting infringement requirement, yet it did not. Rather, Congress drafted § 1202(b) to include several forms of abetting behavior, the most passive of which, "enable," is defined as "to make possible, practical, or easy." *See* Webster's Third New International Dictionary 745 (1986). If Congress meant to include a strict requirement of resulting infringement, it would not have drafted § 1202 to include such passive forms of knowing assistance in the intent requirement for a claim. Moreover, the "knowing, or . . . reasonable grounds to know"

---

[3] Defendants claim that the decision in *Steele v. Bongiovi*, 784 F. Supp. 2d 94 (D. Mass. 2011), adopted the rule they propose. Defendants are mistaken. In *Steele*, an unusual case, the plaintiff accused various lawyers, who had previously defended a claim of infringement by the same plaintiff, of altering evidence to facilitate the previously alleged infringement. *Id.* at 96. The court in *Steele* held that, because "the alleged alterations would not have changed [the court's] determination," the defendants could not be said to know they were abetting infringement. *Id.* at 98. That is, the defendants' alleged conduct had no bearing on the finding of no infringement, and therefore, it would be impossible to show their intent to knowingly abet. *See id.*

[4] The Court's task, in evaluating Defendants' contention, is primarily one of statutory construction. If a statute's meaning is unambiguous, no other methods of construction are necessary to determine congressional intent. *See United States v. Clark*, 454 U.S. 555, 560 (1982).

prong of a § 1202 claim relates solely to a defendant's intent; it is easy to imagine circumstances where a defendant might intend to abet an infringement without one ever occurring. Simply because an infringement did not occur, as with the listener-altered images, which constitute fair use, does not mean that Defendants could not have intended to abet an infringement. Rather, that element speaks to Defendants' state of mind. Under § 1202(b)(1), for instance, a violation occurs if there is a removal or alteration of CMI, which must be accompanied by the requisite intent to abet an infringement—not from the removal or alteration of CMI accompanied by an actual infringement, as Defendants argue.

Defendants assert that the fair use doctrine, as an accommodation of copyright law to the First Amendment, requires that § 1202 be interpreted to not recognize claims where the resulting use of an image is deemed a fair use: "If the DMCA is read to attack or restrict *non-infringing speech*, then its constitutionality is at issue because the speaker cannot rely on fair use . . . to accommodate and balance free speech interests and values." (Defs.' Br. 15 (emphasis in original).) Defendants again misconstrue the nature of a § 1202(b) claim. A claim under § 1202(b) does not necessarily attack non-infringing fair uses of copyrighted works—it targets conduct that does harm to identifying information that helps to protect the copyright holder, such as CMI. *See* § 1202(b). Only the listener-altered images have been determined to be fair use. Here, Plaintiff brings suit against Defendants for their removal or alteration of CMI, or distribution of CMI-altered works, not against Defendants' listeners.

In support of their position, Defendants point out that the Federal Circuit, in *Chamberlain Group, Inc. v. Skylink Technologies, Inc.*, interpreted § 1201 of the DMCA to impose an infringement-nexus requirement to an anti-circumvention claim under that section. *See* 381 F.3d 1178, 1195 (Fed. Cir. 2004). This construction does not compel a similar result here. For one, the

Ninth Circuit has adopted an opposite construction of § 1201, without an infringement-nexus requirement. *MDY Industries., LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928, 950 (9th Cir. 2010). In addition, the language of § 1201 is entirely distinct from that of § 1202(b) and attacks altogether different conduct. Most importantly, the plain language of § 1202(b) simply compels a contrary conclusion.[5]

For the above reasons, Defendants' motion for partial summary judgment, addressed to Plaintiff's DMCA claims and the listener-altered images, is denied.

### 2. Unaltered Image

Defendants' second contention related to Plaintiff's DMCA claims concerns the placement of the unaltered image on WKXW's website. Defendants have conceded that the placement of the unaltered image on the website constitutes copyright infringement. (Defs.' Br. 21.) However, Defendants argue that they cannot be held liable under the DMCA because CMI was not "removed" from the image—rather, it was merely omitted—and Plaintiff has not established the requisite intent needed to make a claim under § 1202(b).

Again, the Court must first determine whether Plaintiff's Rule 56(d) motion precludes the Court's consideration of summary judgment on the above issues. Here, Defendants do not seek the Court's decision on a purely legal issue. Whether and to what extent Defendants removed or altered the gutter credit are issues of fact. In addition, whether Defendants possessed the requisite

---

[5] Defendants put forth an additional argument in support of their position: because § 1202(b) only bars removal or alteration of CMI "without the authority of the copyright owner *or the law*," § 1202(b), in circumstances where, as here, the alleged underlying infringement is deemed fair use, there can be no claim because fair use, a doctrine of law, permits the use of the image. Again, Defendants' argument fails. The conduct that § 1202 attacks is the removal or alteration of CMI, or distribution of CMI-altered works, not the related use of a copyrighted work.

11

intent under § 1202 is also a fact question. As a result, these issues can only be resolved on summary judgment if there is no dispute of material fact.

Here, based on the factual material presented, the Court cannot resolve the issues that are the subject of Defendants' motion for summary judgment. Defendants, in their motion, do not offer any version of how the radio station received the image in question, in what format it was received, who received the image, or who ultimately posted the image to the radio station's website. (SUMF ¶ 4 ("Shortly after the photograph appeared in the magazine, WKXW posted a copy of the entire photograph on the radio station's website . . . .").) On the other hand, Plaintiff does not assert a factual account of these matters, but rather contends that additional discovery is necessary to ascertain who received and posted the photo, whether he or she altered or modified the gutter credit, and what his or her intent was.[6] (Pl.'s Moving Br. 31-33.) As a result, these issues are not ripe for summary judgment, and Plaintiff must be permitted to take additional discovery on the factual issues in question.[7]

---

[6] The Court's prior decision on summary judgment ordered that Defendants engage a forensics expert to examine a computer used by webmasters at WKXW. (June 14, 2013 Op. 4, ECF No. 97.) Plaintiff submitted, with his motion, an affidavit from Paul J. Neale ("Neale Aff."), the expert retained to conduct the examination. Neale attests that he was informed that one Steve Bibbo sent the image to Carton and Rossi. (Neale Aff. ¶ 10.) Neither party cites to this or offers this fact in support of their respective motions. In any event, it appears that Neale's attestation is not made with personal knowledge. Accordingly, the Court does not consider it in resolving the motions. *See Aronson v. Peoples Natural Gas Co.*, 180 F.3d 558, 563 n.2 (3d Cir. 1999) (affirmation of facts obtained from "conversations with others" are not made with personal knowledge and are disregarded).

[7] Defendants also argue, with respect to the single unaltered image, that "one cannot induce oneself to infringe," and therefore, the DMCA claim fails. (Defs.' Br. 21.) The Court does not find this argument persuasive. More importantly, however, this argument fails because it assumes the identity of whoever allegedly removed the gutter credit and who may be liable for the underlying infringement, both of which are currently unknown and for which additional discovery is necessary.

### B. Defamation

The remaining two bases for Defendants' motion for partial summary judgment concern Plaintiff's defamation claims. As discussed, Plaintiff alleges that two separate statements form the basis for his defamation claims. Defendants' next basis for summary judgment relates solely to alleged statements regarding Plaintiff's sexual orientation, and Defendants' final basis for summary judgment relates to the defamation claims more broadly.[8]

#### 1. Statements Regarding Plaintiff's Sexual Orientation

Defendants first seek summary adjudication on the portion of Plaintiff's claim for defamation based on alleged defamatory statements suggesting that Plaintiff is a homosexual. Defendants argue that these statements do not constitute slander per se, and as a result, presumed damages are not available; without the availability of presumed damages, Defendants assert, Plaintiff's claim based on these alleged statements must be dismissed because he cannot prove actual harm. Plaintiff contends that the Court cannot rule on this issue because he has been unable to discover, through depositions of Carton or Rossi or through the production of tape recordings of the broadcast (which have apparently been destroyed), exactly what was said by Carton and Rossi.

Plaintiff's motion, based on the need for additional discovery, is granted. The Third Circuit, in resolving Plaintiff's appeal of Judge Pisano's decision, held that the Court's decision on the issue of whether these statements constitute slander per se was error. *Murphy*, 650 F.3d at 310. The court held that, without discovery of "the actual statements Carton and Rossi made on

---

[8] Although Defendants' point heading identifies, as related, only those statements discussing Plaintiff's business dealings, Defendants' arguments and supporting evidence relate to the defamation claims in general. As a result, the Court will decide this portion of the motion as applicable to the defamation claims in general.

air about him," the question of the statements' defamatory nature cannot be resolved. *See id.* Since the Third Circuit's decision, the record, in terms of the content of the statements at issue, has not been sufficiently developed. Accordingly, additional discovery on the content of the statements is necessary,[9] and Defendants' motion for summary judgment on this issue is denied without prejudice.

### 2. Defamation Damages

Defendants seek dismissal of Plaintiff's request for compensatory and punitive damages with respect to Plaintiff's defamation claims in general.[10] Plaintiff has not offered any opposition on this issue other than to state that additional discovery is needed to ascertain the specific nature of the statements at issue.

The types of damages available on a claim for defamation under New Jersey law are well established. "Damages which may be recovered in an action for defamation are: (1) compensatory or actual, which may be either (a) general or (b) special; (2) punitive or exemplary; and (3) nominal." *W.J.A. v. D.A.*, 210 N.J. 229, 239 (2012) (internal quotation marks omitted). The Supreme Court of New Jersey provided a comprehensive statement on the damages available in a defamation claim in *W.J.A.*:

> Actual damages, as the name implies, refers to the real losses flowing from the defamatory statement. It 'is not limited to out-of-pocket loss,' but includes 'impairment to reputation and standing in the community,' along with personal humiliation, mental anguish, and suffering to the extent that they flow from the reputational injury.

---

[9] To the extent this ruling conflicts with the Court's prior decision on summary judgment (ECF Nos. 97, 98), that decision is superseded. *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision ... that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

[10] *See supra* note 8.

*Id.* (citation omitted) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)). Presumed damages, which "are to be anticipated when a person's reputation is impaired," "are a procedural device which permits a plaintiff to obtain a damage award without providing actual harm to his reputation" and are available in slander cases where the statement at issue qualifies as defamatory per se. *Id.* 239-40. Presumed damages, however, are limited to a nominal amount. *NuWave Inv. Corp. v. Hyman Beck & Co.*, 432 N.J. Super. 539, 557 (App. Div. 2013) (discussing *C.J.A.*) ("While an adequately instructed jury may make an award of presumed damages absent proof of actual harm to a plaintiff's reputation, the award must be 'nominal.'"). In addition, a plaintiff may not receive both presumed and compensatory damages. *Id.* ("[W]e conclude that a jury cannot do both, i.e., award both presumed nominal damages and other 'actual damages.'"). Last, the availability of punitive damages is governed by New Jersey's Punitive Damages Act, N.J.S.A. 2A:15-5.9 to -5.17. *See, e.g., Baldinger v. Ferri*, 541 F. App'x 219, 222 (3d Cir. 2013). Under that law, "an award of compensatory damages [is] a statutory predicate for an award of punitive damages," *Smith v. Whitaker*, 160 N.J. 221, 245 (1999) (citing N.J.S.A. 2A:15-5.13), and "[a]n award of nominal damages cannot support an award of punitive damages." N.J.S.A. 2A:15-5.13(c).

Applying those standards here, and in consideration of Plaintiff's representations as to damages, Defendants are entitled to summary judgment on Plaintiff's claim for compensatory and punitive damages. Plaintiff, at the outset of this case and in the Complaint, requested "[c]ompensatory, special and punitive damages against all Defendants for defamation of Plaintiff under New Jersey law." (Compl. ¶ 5, at 16.) However, Plaintiff has since, for the most part, disclaimed any intention of proving compensatory damages and has altogether declined to offer any evidence in support of actual damages. Plaintiff's disclosures under Rule 26, which requires

that parties "provide to the other parties . . . a computation of each category of damages claimed," Fed. R. Civ. P. 26(a)(1)(A), state that "Plaintiff seeks presumptive and punitive damages, as alleged in the Complaint, against all Defendants for defamation under New Jersey law." (Decl. of Thomas J. Cafferty, Defs.' Moving Br. ("Cafferty Decl. I"), Ex. A, ECF No. 113-3.) Plaintiff has also responded to interrogatories requesting itemized claimed damages or information related to emotional damages stating that "damages are presumed" and that "Plaintiff is not presently claiming damages for emotional harm." (Cafferty Decl. I ¶¶ 3, 4, Ex. B.) Plaintiff has also defended requests for discovery, denying Defendants access to likely otherwise discoverable information, on the basis that "damages are presumed." (*Id.* ¶ 5, Ex. C.)

Furthermore, and more critical to the resolution of the instant motions, Plaintiff has not provided any evidence of actual harm, either in the form of out-of-pocket losses or, more broadly, to his reputation, sufficient to create a genuine dispute of material fact. Although Plaintiff provided a supplemental interrogatory response, in July 2012 following the Supreme Court of New Jersey's decision in *W.J.A.*, stating that "Plaintiff is seeking actual damages," he has not submitted any evidence of damages in support of his claims and in opposition to Defendants' motion. Although Rule 56(d) provides a defense to a summary judgment motion, the claim that additional discovery is needed is logically specious where, as here, the information at issue is exclusively within the control of the party invoking 56(d). *Cf. Abington Friends Sch.*, 480 F.3d at 259 (stating that 56(d) motions should be granted where facts at issue are under the control of the party seeking summary judgment). Defendants, here, have offered deposition testimony tending to show that Plaintiff's reputation has not been harmed (Cafferty Decl. I ¶¶ 6, 7, Exs. D, E), and Plaintiff has not provided any evidence tending to rebut Defendants' proffered evidence, nor identified what additional discovery would assist him in opposing Defendants' motion.

For these reasons, Defendants' motion for summary judgment on the availability of compensatory and punitive damages is granted.

### C. Spoliation

In addition to moving under Rule 56(d), Plaintiff moves for sanctions, asserting that Defendants have failed to preserve and have destroyed highly relevant evidence, and as a result, Plaintiff is entitled to a spoliation inference. Plaintiff claims that Millennium destroyed the recording in which Carton and Rossi allegedly defamed him and failed to preserve various forms of evidence despite being aware that Plaintiff was likely to sue. Based on this, Plaintiff requests that the Court sanction Defendants in the form of a spoliation inference, "to infer that destroyed evidence might or would have been unfavorable to the position of the offending party." *See Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 336 (D.N.J. 2004) (internal quotation marks omitted).

"This Court has the authority to impose spoliation sanctions pursuant to the Federal Rules of Civil Procedure and this Court's inherent authority." *Id.* at 335. "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). Analysis as to whether spoliation occurred and whether sanctions should issue are analytically distinct; if the Court determines that spoliation occurred, it must then determine whether and what form of sanctions should issue. *See id.* at 73 n.4. Plaintiff expressly requests that a spoliation inference be applied at the summary judgment stage. (Pl.'s Reply Br. 14-15, ECF No. 128-1.)

Because the facts offered in support of Plaintiff's request for sanctions have not been fully developed, the Court denies Plaintiff's motion without prejudice to its renewal following the close of discovery. As discussed, discovery in this case has been limited by the Court in furtherance of case management. The additional discovery that Plaintiff may take will further develop the factual record regarding the alleged spoliation at issue. Accordingly, Plaintiff's motion for sanctions is denied without prejudice.

## IV.  Conclusion

For the above reasons, Defendants' motion for partial summary judgment is granted in part and denied in part. Similarly, Plaintiff's Rule 56(d) motion is granted in part and denied in part. Last, Plaintiff's motion for a spoliation inference is denied without prejudice. Discovery in this matter should proceed on all remaining claims and defenses. An order consistent with this opinion will be entered.

/s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: January 29th, 2015